**SO ORDERED.**

**SIGNED this 09 day of July, 2007.**



_____
**JANICE MILLER KARLIN**
**UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| DEMETRIUS DELAYNE REED, | ) | Case No. 03-40669-7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| ANTHONY WILLIAM SCHULTZ and | ) | Case No. 03-42331-7 |
| TONYA LOUISE SCHULTZ, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| CARLTON DELANCE LOVE and | ) | Case No. 04-42566-7 |
| LAREASHA LYNETTE LOVE, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| RONALD GERALD NASCA and | ) | Case No. 07-40098-13 |
| SHARYN PATRICIA NASCA, | ) | |
| | ) | |
| Debtors. | ) | |

**MEMORANDUM OPINION AND ORDER**

At issue in each of the cases is the following sentence contained in the standard order confirming Chapter 13 plans that has been routinely used in Topeka for many years:[1]

> "In a case which is converted to another Chapter under Title 11 of the United States Code, property, other than funds which the Chapter 13 Trustee has on hand, and moneys which have been withheld from the debtor's wages not remitted to the Trustee, which are part of the Bankruptcy estate at the time of conversion, including tax refunds, shall be administered by the successor Trustee.

The language in question appears to allow Chapter 7 Trustees to collect post-petition tax refunds from debtors in the event a case is converted, regardless of the nature of the conversion.

The four cases currently before the Court are in two very different stages of their proceedings. In *Reed*, *Schultz* and *Love*, the Chapter 13 Confirmation orders in question were entered several years ago, and each case has since converted to a Chapter 7 proceeding. The newly appointed Chapter 7 Trustee in each case is seeking turnover of some or all of the income tax refunds to which each Debtor became entitled between the time of the original Chapter 13 filing and the date the case was converted to a Chapter 7. In *Nasca*, the Chapter 13 Confirmation order was just recently entered, and the Nascas have moved to amend their Confirmation order within ten days of its entry to remove the challenged language.

The Court finds that three issues must be decided regarding the disputed language. First, does the language conflict with the Bankruptcy Code, mandating that it be removed in future cases? Second, can the Court grant relief from the confirmation order to Debtors Nascas, since

---

[1] The Court issued a short oral opinion in these cases at the Chapter 13 confirmation docket on June 27, 2007, and announced that this opinion, which provides greater detail, and which applies the ruling to each case, would be forthcoming.

2

they sought relief within 10 days of the entry of their confirmation order? The third question is whether the other Debtors may obtain relief from the confirmation order even though they did not seek relief from the order for several years.

**Background**

A short explanation of the circumstances that have, in the Court's mind, lead to the issues concerning the use and administration of post-petition tax returns may be helpful to provide some context. In an effort to allow many low-income debtors the opportunity to propose a feasible Chapter 13 plan in the hope of saving their automobiles or their homes, as well as occasionally repaying some of the debt that would otherwise be discharged without any payments to creditors in a Chapter 7 proceeding, the Chapter 13 trustee, and ultimately this and the prior resident judge, have essentially sanctioned the practice of allowing debtors to effectively "amortize" their expected tax refunds within Schedule I. Oftentimes, lower income debtors receive relatively large tax refunds, in the range of $3,000 to $4,000 annually, based primarily on their entitlement to receive an Earned Income Tax Credit.[2]

The actual monthly income for many of these debtors is insufficient to meet their ongoing expenses as well as fund a Chapter 13 plan payment, but if they can spread out the anticipated tax refund over the year, some of those debtors can potentially succeed in a Chapter 13 plan. The fiction is that they will create a savings account with that tax refund, and draw out of it for payment of necessary expenses for the upcoming year. Because the debtors' tax refunds come in one lump sum in the next tax year, rather than in equal monthly payments, as their

---

[2]*See* 26 U.S.C. §32 (2006).

Schedules I suggest, however, debtors invariably fall behind on both their plan payments and their current living expenses until the lump sum tax refund check arrives. The debtors then use the tax refund to catch up on their late payments for ongoing monthly expenses as well as, oftentimes, any missed Chapter 13 plan payments that have not been abated and are past due, as well as to fund any unbudgeted expenses, such as unanticipated car repairs or home repairs. The Court routinely approves the use of these funds when neither the Chapter 13 Trustee nor any creditor objects, and the request appears reasonable.[3]

This informal approach has been implemented as simply an accommodation to all parties. Debtors could pay their lawyers to amend their Schedule J when the unexpected budget item occurs, and then file motions to amend their plans to temporarily reduce their plan payments to allow for payment of an unbudgeted item, or extend payments over more months, to pay for the unbudgeted item (oftentimes a replacement car, house repairs, or medical expenses). Once the unbudgeted item is paid for, however, debtors would then need to re-amend their Schedule J, and re-amend their plan, to increase their plan payment back to where it was. To save all that time and expense for all parties in interest, including the Court, the Court has essentially adopted a shortcut that just allows Debtors to move to use part or all of their tax refund to pay for the unbudgeted expense.

Unfortunately, this practice has metamorphosed into an all too common practice whereby debtors who have not relied on the anticipated refund, in their Schedule I, nevertheless spend

---

[3] The problems with falling behind on plan payments and current living expenses is not isolated to those cases where the tax refund is amortized into Schedule I, and the policy behind allowing the use of the tax refunds applies to many lower income debtors, whether it was necessary to amortize the tax refund to propose a feasible plan, or not.

4

these post-petition refunds without obtaining prior Court approval. They then retroactively seek the Court's permission to use the funds, usually only after the Chapter 13 Trustee has been forced to file a motion for turnover of those funds. Although not favored, the Court has generally granted these requests from Chapter 13 debtors who can demonstrate real need.

The much preferred method for dealing with the use of tax refunds is for a debtor to file a request to use the funds before the tax refund is spent, or better yet, before the tax refund is even received.[4] Furthermore, it should go without saying that the request to use the funds should only be made when the debtor has truly incurred an unbudgeted/unpredicted expense that cannot otherwise be covered by his or her earned income.

The practice of seeking forgiveness for using tax refunds without court order, rather than seeking permission, becomes even more problematic when, as in three of these four cases, the debtor converts to a Chapter 7 while there remains a post-petition tax refund[5] that has not been accounted for by the debtor (either by way of turnover or by receiving permission to use the refund) and the money has already been spent. Based on today's holding, at least in cases with the long-standing confirmation order, that refund remains property of the Chapter 7 estate and

---

[4]For an example of the best way to approach the use of these funds, see *In re Coomes*, Case No. 03-42505, Motion for Authority to Utilize Income Tax Refunds for 2005 (Doc. 31) or Motion for Authority to Utilize a Portion of Income Tax Refunds to Meet Unbudgeted Automobile Expenses (Doc. 28).

[5]Tax refunds for the pre-petition portion of a tax year are oftentimes an issue upon conversion, as well. Oftentimes, upon the Trustee's request for a copy of the tax return that became due after the case was filed, a debtor will seek permission to retain the pre-petition portion (oftentimes because it has been spent despite debtors' lawyers and the trustee's admonitions to the contrary) with an agreement to "pay it back" over the life of the plan. When the case is converted to a Chapter 7 before the pre-petition portion has been repaid to the Chapter 13 estate, the Chapter 7 trustees seek to have it repaid to the Chapter 7 estate, instead. In none of these cases is a pre-petition refund at stake.

5

the debtors will be required to account for the funds in some way – whether it be turnover to the Chapter 7 estate or by otherwise demonstrating that the Court would have allowed them to use the funds for some necessary and unbudgeted expense, if such relief had been sought prior to conversion, as discussed in more detail, below.

**I.      Does the Court's standard confirmation order conflict with the Bankruptcy Code?**

With this background in mind, the Court must first decide whether the language at issue in the confirmation order conflicts with provisions of the Code. The language in question clearly indicates that post-petition tax refunds, which would be part of the bankruptcy estate at the time of conversion pursuant to 11 U.S.C. § 1306(a)(1),[6] may be administered by the Chapter 7 Trustee upon conversion of the case. This provision is in direct conflict with § 348(f), which states that, unless the debtor converts the Chapter 13 case to one under another chapter in bad faith, the "property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion." The language in the standard confirmation order clearly conflicts with, and improperly expands the reach of § 348(f).

The Chapter 7 Trustees have raised concerns about the collection and administration of post-petition tax refunds in Chapter 13 cases [before they are converted to a Chapter 7 proceeding], as well as equitable arguments concerning debtors' use of delayed vesting, to argue

---

[6]All but the *Nasca* case were filed before October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) became effective. Because the statutory references in this Memorandum were not changed by BAPCPA, all references to the Code are to 11 U.S.C. §§ 101-1532 (West 2004 & Supp. 2006). All references to the Federal Rules of Bankruptcy Procedure are to the current Fed. R. Bankr. P., unless otherwise specified.

6

that expansion of the statutory reach of §348(f), to include the long-standing verbiage in question, is justified. The Chapter 7 Trustees argue that it is fundamentally unfair to allow Debtors to ignore their obligations to turn over post-petition tax refunds to the Chapter 13 Trustee, while remaining under the protective umbrella of delayed vesting, only to convert the case at a later date and reap the benefits of delayed vesting without having to account for the property that should have been turned over for the benefit of the estate during the pendency of the Chapter 13. Essentially, they are seeking to put the debtor back into the position he would have been had he not converted; he must either turn the refund over to the trustee or get permission to retain it.

  Although the Trustees' concerns are well taken, the Court finds that § 348(f) very clearly describes what property is included within the property of the new Chapter 7 estate in the event a case is converted for some reasons <u>other</u> than bad faith. While Chapter 13 Trustees, and all Trustees for that matter, are given wide latitude when it comes to administering property of the estate, and while the Code expressly allows debtors to delay vesting under § 1327(b), the Code provides no such discretion when it comes to the definition of "property of the estate" in a converted case.

  Although the Chapter 7 Trustees bring valid concerns and raise important issues of equity, Congress has settled the issues raised by the Chapter 7 Trustees by enacting the clear terms of § 348(f). If the Chapter 7 Trustees wish to attempt to collect these post-petition tax refunds in future cases, they must do so under the provisions of § 348(f)(2), which will require them to establish that the conversion was undertaken in bad faith. Accordingly, the Court finds that the noted sentence contained in the standard confirmation order cases is in conflict with 11

U.S.C. § 348(f), and must be stricken from future confirmation orders.

## II. Can the Court grant Debtors Nasca relief from their confirmation order?

Having determined that the language in question is in conflict with § 348(f), the Court turns to the relief available to the Nasca Debtors. Their confirmation order was entered on April 12, 2007. Four days later, they filed a Motion to Strike Language of Confirmation Order In So Far as It Contains Language Which is Contrary to Applicable Law.[7] Although not specifically plead as such, the Court will treat this motion as one to alter or amend the confirmation order under Fed. R. Civ. P. 59(e), since it was filed within 10 days of the entry of the order.[8]

Grounds warranting a motion to reconsider include "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."[9] A "motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law."[10]

The Court finds that the motion to strike should be granted in *Nasca*. The confirmation order was filed only a few short days before leave to amend the order was sought, and the Court has found that the confirmation order conflicts with controlling law. Therefore, the motion to strike is granted. Any language in the confirmation order entered on April 12, 2007 that would erroneously incorporate all property acquired post-petition, including post-petition tax refunds,

---

[7]Doc. 16.

[8]Fed. R. Civ. P. 59 is made applicable in bankruptcy proceedings, with one exception not applicable here, pursuant to Fed. R. Bankr. P. 9023.

[9]*Servants of Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark Corp. v. Samson Res. Corp.,* 57 F.3d 941, 948 (10th Cir.1995)).

[10]*Id.*

8

into a Chapter 7 bankruptcy estate in the event this case is later converted, regardless of the nature of the conversion, is stricken from that order to the extent the language is inconsistent with § 348(f).

### III. Can Debtors Reed, Schultz and Love obtain relief from the language contained in their confirmation orders?

The confirmation orders in *Reed, Schultz*, and *Love* were entered on July 25, 28003, November 20, 2003 and May 25, 2005, respectively. No motions for reconsideration of the terms of the confirmation orders were filed and none of the orders was appealed. The confirmation order in each of these three cases was a final order of the Court. Once an order or judgment of the court becomes final, the only remedy available to have it set aside is under Rule 60 of the Federal Rules of Civil Procedure.[11]

Debtors could potentially rely on Fed. R. Civ. P. 60(a) to set aside the confirmation orders in each of their cases, on the basis that the language in each order was simply a clerical mistake. Rule 60(a) deals with errors, oversights, omissions and unintended acts or failures that result in a record that does not properly reflect the intention of the parties or the court. In other words, Rule 60(a) exists not to alter a judgment, but rather to make it accurately state what the judgment is. Rule 60(a) may be invoked to make a judgment or order reflect the actual intentions of the court, plus necessary implications. The court thus has much wider latitude under Rule 60(a) motions to insure that its orders do not contain such errors and oversights in this respect than it does under Rule 60(b).[12] Debtors have the burden to show that the language

---

[11] Fed. R. Bankr. P. 9024 makes Rule 60 applicable to bankruptcy cases.

[12] *In re Bestway Products, Inc.,* 151 B.R. 530, 534 (Bankr. E.D. Cal. 1993).

9

in the confirmation orders is such an error or oversight, and that it does not properly reflect the intention of the parties or the court.

The Court finds no evidence to support a claim that the disputed language in the confirmation orders was the result of a clerical error or mistake. Based upon the Court's familiarity with the Chapter 13 confirmation order in this district over time, the sentence was purposely placed in the confirmation order, albeit not knowingly in violation of § 348(f), and remained in the standard order for many years. Therefore, the Court finds the parties are not entitled to relief under Rule 60(a).

Rule 60(b) allows a court to relieve a party from a final order upon a showing of one of six considerations. The first three options under Rule 60(b) include (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence by which due diligence could not have been discovered in time to move for a new trial under Rule 59(b); and (3) fraud, misrepresentation or other misconduct of an adverse party. Unfortunately for Debtors, however, action must be taken under each of these three circumstances within one year of the entry of the final order. Because well over a year has passed, these Debtors are only left with showing that they are entitled to relief on the grounds that (1) the judgment is void; (2) the judgment has been satisfied, released, or discharged; or (3) any other reason justifying relief from the operation of the judgment.[13]

Relief under Rule 60(b) is "'an extraordinary remedy that allows the court 'to preserve the delicate balance between the sanctity of final judgments and the incessant command of a

---

[13] *See* Fed. R. Civ. P. 60(b)(3)-(6).

court's conscience that justice be done in light of all the facts.'"[14] Relief under Rule 60(b) is not available when used to avoid the consequences of a party's decision to forego an appeal.[15] These Debtors must also establish that they qualify for Rule 60(b) relief by "clear and convincing evidence."[16]

There is nothing in the record to indicate that the confirmation orders were void, and they are not judgments that could have been satisfied, released or discharged. Therefore, to obtain relief in these cases, Debtors must proceed under the catch-all provision found in Rule 60(b)(6).

In addition to the typically high hurdle a party must clear in order to obtain relief under Rule 60(b)(6), Debtors face an additional hurdle based upon relatively recent Tenth Circuit case law confirming the need for finality in the confirmation of Chapter 13 plans. As discussed at length in *In re Andersen*,[17] "'upon becoming final, the order confirming a Chapter 13 plan represents a binding determination of the rights and liabilities of the parties as ordained by the plan.'"[18] "'There must be finality to a confirmation order so that all parties may rely upon it without concern that actions which they may thereafter take could be upset because of a later change or revocation of the order.'"[19] The need for finality in the confirmation process requires

---

[14] *In re Kieffer-Mickes, Inc.*, 226 B.R. 204, 209 (8th Cir. B.A.P. 1998) (citing *Hoover v. Valley West D M*, 823 F.2d 227, 230 (8th Cir. 1987) (quoting *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 515 (8th Cir. 1984)).

[15] *In re Zirpel*, 53 B.R. 422, 424–25 (Bankr. S.D. 1985).

[16] *Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir. 1995).

[17] 179 F.3d 1253 (10th Cir. 1999).

[18] *Id.* at 1258 (quoting *U.S. v. Richman (In re Talbot)*, 124 F.3d 1201, 1209 (10th Cir. 1997)).

[19] *Id.* at 1259 (quoting 5 Collier on Bankruptcy ¶ 1327.01[1] (15th ed. 1996)).

11

the enforcement of a confirmation order even if a provision of the order or the plan does not comply with a provision of the Bankruptcy Code.[20]

Based upon the need for finality in the confirmation of Chapter 13 plans, as set forth in *Andersen*, the Court finds that Debtors are barred from seeking to amend the confirmation orders in these cases to eliminate the provisions that allow Chapter 7 Trustees to administer tax refunds. The rights of the parties, including the Debtors and all creditors, were firmly established two to four years ago when the confirmation orders were entered. Because these Debtors failed to timely appeal the confirmation orders, they are now bound by the terms of those orders, and they cannot now be altered by a collateral attack. If the offending language was to be removed, it should have been done so by a direct appeal of the confirmation order.

A. **Impact on *Schultz***

*In re Shultz* is currently before the Court on Debtors' Motion to Determine Interest of Estate in Post- Petition Tax Refunds. According to the parties, the Trustee has not filed a formal demand for turnover of these funds, but has indicated that she has informally requested that Debtors turn over their 2006 income tax refunds, in the amount of $3,847.89.[21] Based upon the

---

[20]*Id.* at 1258-59. *See also Underwriters Nat'l Assurance Co. v N. Carolina Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 714 (1982) and *United States v Tippett*, 975 F.2d 713, 719 (10th Cir. 1992) (holding that the "res judicata consequences of a final, unappealed judgment on the merits [are not] altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case . . . .").

[21]Debtors also contend that the Trustee may be seeking turnover of their 2004 and 2005 tax refunds, as well. However, in the Trustee's response, she indicates that to the extent Debtors have complied with the Court's May 13, 2005 order that expressly allowed the Debtors to use their 2004 and 2005 refunds, she does not intend to make a claim for those refunds. No such order allowing the use of the 2006 refund was ever sought by Debtors, however, leaving that asset subject to potential administration by the bankruptcy estate as a result of the language of the confirmation order.

12

Court's findings in this opinion, the Chapter 7 estate does have an interest in Debtors' 2006 tax refunds as a result of the language in the confirmation order, and the Trustee has the authority to attempt to administer those funds.

The parties have also raised the issue of whether this case was converted in bad faith, which would provide an alternative basis for the Trustee's claim to the 2006 tax refund under § 348(f)(2). However, because the Trustee has not sought formal turnover of those funds and has not filed a motion for turnover directly alleging bad faith, the Court finds that issue is not properly before the Court at this time. If the Trustee wishes to seek turnover of those funds on the basis of bad faith conversion as well as on the binding effect of the confirmation order, to make a stronger record on appeal, or otherwise, the Trustee will need to file a formal motion seeking turnover that articulates why the Court should now consider whether the case was converted in bad faith pursuant to § 348(f)(2).

As explained in the "background" section of this opinion, however, the Court assumes the Trustee, before making further attempt to obtain turnover of tax refunds, will analyze, after receipt of concrete information provided by Debtors (if requested), whether Debtors had unscheduled or unbudgeted expenses (or a reduction in income) that would have justified the use of those refunds in light of Debtors' then income. The Court will allow Debtors the opportunity to establish, by a preponderance of the evidence and with documentary evidence, what their actual income and expenses were during the months in question. If they can establish that, had they timely requested the use of the refunds to pay unbudgeted expenses, the Court would likely have granted that request in lieu of requiring them to file amendments to their Schedules I and J, and to the plan, the Court will likely not order the turnover of the refunds to the Chapter 7

13

trustee.

B.  **Impact on *Love*.**

*In re Love* is in a different posture than the other three cases; it is before the Court on the Chapter 7 Trustee's Motion for Turnover. The Trustee is seeking $1,600 from Debtors' 2006 refund, which amounted to $4,745. Debtors filed an Amended Schedule I and Schedule J on January 13, 2005. In Schedule I, they amortized their expected tax refund in the amount of $400 per month. In other words, to demonstrate feasibility, they indicated that they needed to "use" 1/12 of the anticipated refund, or $400 per month of their expected refund, to make their ongoing Trustee payment and/or pay for their regular monthly living expenses.

The Trustee claims that during 2006, Debtors failed to make four payments to the Chapter 13 Trustee. She alleges that since Debtors in essence were using $400 per month of the refunds to fund the plan, they should have to repay the amounts of the refund not used for that intended purpose. One note about the Trustee's theory is that Debtors were not necessarily required to use that $400 per month to make the plan payment; they were merely required to use that $400 for the reasonable and necessary expenses disclosed on Schedule J, or for the plan payment. They could have used their other income to physically pay the Trustee's plan payment. Admittedly, they needed to use all of their income, including the amortized refund amount, for reasonable and necessary expenses.

The Court has held that Debtors' 2006 tax refund is property of the estate that can be administered by the Chapter 7 Trustee, solely as a result of the wording of the confirmation order, when the debtor has not received the Court's permission to use the refund. Here, Debtors impliedly received the Court's permission to fund their ongoing reasonable and necessary

14

expenses of living and/or to make the plan payment with the anticipated refund, because the Court confirmed the plan based on the Amended Schedule I that "uses" 1/12 of the refund each month.[22] Debtors obviously did not use the refund or other income to fund the plan, and they should be held accountable for that decision.

The Court will defer ruling on the Trustee's Motion for turn over of $1,600 to allow Debtors to prove that during the four months in question, their actual income and actual expenses exceeded by at least $400 each month, or at least $1,600 in the aggregate, the amounts reflected on their most recently amended Schedules I and J. If they can demonstrate that with testimony **and** documentation, and not just a generalized sense of their financial situation, the Court may well find that they are not required to turn over the money requested. Again, as stated above, the rationale for proceeding in this fashion is the recognition that all parties—the Chapter 13 Trustee, Debtors' counsel, and the Court, had in essence adopted this shortcut to eliminate the time, fees and costs associated with amending schedules and plans when unexpected budget items or loss of income crop up (one or both of which seem to invariably occur during the life of most plans) during the Chapter 13, mailing notice of those to all interested parties, and processing orders. The Court intends to proceed in this fashion on these cases, i.e., those converted Chapter 13 cases where plans were confirmed with language admittedly contrary to the Code, and where the Chapter 7 trustee seeks to capture the refund for which the debtor has not previously accounted.

---

[22]Concomitantly, if a debtor amortizes his refund in Schedule I based on expected or previously received refunds, and the refund received is actually higher, the Court has not given him permission to expend the excess by confirming a plan based on the lesser number contained in Schedule I.

15

### C. Impact on *Reed*

Reed filed a Motion for Determination that his 2006 Income Tax Refunds are not Property of the Chapter 7 Estate. Because the language of the confirmation order has deemed this refund property of the Chapter 7 estate, his motion is denied. The Trustee has not filed a formal motion for turnover of funds, but in her response to Debtor's motion, she alleges that the case was converted in bad faith. Although the Court's holding today, that Debtor's 2006 income tax refund is property of the estate based only upon the language contained in the confirmation order, makes a finding of bad faith unnecessary, if the Trustee wishes to pursue this alternative remedy, to make a stronger record on appeal, or otherwise, the Trustee will need to file a formal motion seeking turnover that articulates why the Court should now consider whether the case was converted in bad faith pursuant to § 348(f)(2).[23] As explained above, however, the Trustee should first analyze, hopefully with concrete information forthwith provided by Debtor, whether Debtor had documented, and unscheduled or unbudgeted, expenses that would have justified the use of those refunds in light of Debtor's then income.

### IV. CONCLUSION

The Court finds that the referenced sentence[24] of the standard confirmation order that this Court inherited and adopted is in conflict with § 348(f) of the Bankruptcy Code. For that reason,

---

[23]The Court is obviously trying to use its equitable powers to make this situation as fair as possible to all parties. In the event a debtor is found to have converted a case in bad faith, it is unlikely the Court would opt to exercise its equitable powers in that debtor's favor.

[24]Again, the language to be omitted in future orders is: "In a case which is converted to another Chapter under Title 11 of the United States Code, property, other than funds which the Chapter 13 Trustee has on hand, and moneys which have been withheld from the debtor's wages not remitted to the Trustee, which are part of the Bankruptcy estate at the time of conversion, including tax refunds, shall be administered by the successor Trustee."

the Court orders that the offending sentence be removed from all future confirmation orders. The Court finds, however, that the confirmation orders entered in *Reed*, *Schultz*, and *Love* are not subject to attack at this time as they were final, appealable orders that were not timely appealed by any of these Debtors. The Court therefore must deny the Debtor(s)' motions in *Reed* and *Schultz* that sought a determination that the tax refunds were not part of the Chapter 7 bankruptcy estate. The Court also grants the Nascas' motion to strike the offending sentence in the recently entered confirmation order in their case.

The Court continues the *Love* case to a Scheduling Conference on **August 15, 2007 at 3:20 p.m.** On or before **August 7, 2007**, Debtors are ordered to provide any and all documentation upon which they would rely at the trial of this matter to demonstrate their income, deductions from income, and reasonable and necessary expenses incurred in the months in question. This will enable the Trustee to determine a) whether she wishes to proceed on her bad faith theory; and b) whether it is likely that debtors did have unbudgeted expenses that justified their use of the refunds for the months in question.

The Court also wishes to take this opportunity to remind debtors' counsel that motions to retain or use tax refunds while a debtor is in a Chapter 13 case should theoretically only be sought for payment of unbudgeted items, or when a debtor's income has diminished (or both). The Court often sees "bare bones" motions that provide, as the sole justification, that the money is needed "for necessary living expenses." This explanation, frankly, is insufficient, because debtors have already budgeted their income to pay those living expenses, and their plan payment (at least in pre-BAPCPA cases and post-BAPCPA below median income cases) is based on those expenses. The Court would request that these motions contain some kind of an explanation why

17

the income and expenses known to the Court through Schedules I and J are not reflective of reality, to assist the Court and the Trustee in properly analyzing them.

**IT IS, THEREFORE, BY THE COURT ORDERED** that the Debtor's Motion to Determine that Debtor's 2006 Income Tax Refunds are Not Property of the Chapter 7 Estate[25] in *In re Reed* and in *In re Schultz* are each denied. The estate does have an interest in the refunds because of the confirmation language, subject to the Debtors meeting their burden to prove that the Court would more likely than not have approved their use and retention of the refund.

IT IS FURTHER ORDERED that the Trustee's Amended Motion for Turnover[26] in *In re Love* is continued to a Scheduling Conference on **August 15, 2007 at 3:20 p.m.**, and Debtors are ordered to provide any and all documentation justifying use of the refund by **August 7, 2007.**

**IT IS FURTHER ORDERED** that Debtors Nasca's Motion to Strike Language of Confirmation Order In So Far as It Contains Language Which is Contrary to Applicable Law[27] is granted, and the pertinent sentence is deemed stricken.

**IT IS FURTHER ORDERED** that the foregoing constitutes Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based on this ruling will be entered on a separate document as required by Fed. R. Bankr. P. 9021 and Fed. R. Civ. P. 58 in all cases except for *In re Love*.

###

---

[25]Doc. 104 in 03-40669.

[26]Doc. 129 in 04-42566.

[27]Doc. 16 in 07-40098.

19